57 CCPA

**Application of Joachim STROSZYNSKI and Erwin Grimm.**

**Patent Appeal No. 8254.**

United States Court of Customs and Patent Appeals.

April 30, 1970.

Bryan & Butrum, Roy W. Butrum, James E. Bryan, Washington, D. C., attorneys of record, for appellants.

Joseph Schimmel, Washington, D. C., for the Commissioner of Patents, Lutrelle F. Parker, Washington, D. C., of counsel.

Before RICH, Acting Chief Judge, ALMOND, BALDWIN and LANE, Judges, and McMANUS, Chief Judge, Northern District of Iowa, sitting by designation.

RICH, Acting Chief Judge.

This appeal is from the decision of the Patent Office Board of Appeals affirming the rejection of claims 9, 10, and 12–22 of application serial No. 411,044, filed November 13, 1964, entitled "Treatment of Material In Web Form."

*The Invention*

The claimed invention is a jet dryer for treating and drying an aerodynam-

---

ically transported web of material with a gas or vapor. Appellants' specification states that the expression "aerodynamically transported" is used to indicate that the web of material is supported in the treatment zone solely by means of jets of the gas or vapor, that is, without mechanical aid. Figs. 1 and 4 from the application drawings are illustrative:

## Appellants' Drawings

FIG.I

FIG. 4

[A1648]

Figs. 1 and 4 are, respectively, a sectional view in elevation and a perspective view of a number of nozzle assemblies. The trough-shaped units 2 are disposed opposite a web of material at 1 in a manner such that the open and closed ends face the web alternately and such that the sides of adjacent units form pairs of slit-shaped nozzles 5 inclined toward each other. Units 4 which have their open ends facing the web also serve as exhaust channels. Ordinarily, a second series of nozzle assemblies is positioned above and opposite the one shown so as to maintain the web in equilibrium between the two.

The one feature which appellants have emphasized, almost to the exclusion of all others, is the wall or baffle 3 which

extends between and is of *the same height* as the nozzle orifices 5a. According to appellants, when jets of a vapor or gaseous medium under presssure issue from the nozzles 5, supporting eddies W are formed which prevent contact between the web 1 and walls 3.

Insofar as the issues before us are concerned, we consider claim 9, the only independent claim, to be representative of all the appealed claims:

9. An apparatus for treating an aerodynamically transported web of material which comprises a chamber having a plurality of jet nozzles therein for impinging a fluid selected from the group consisting of a gas and a vapor upon a web traveling through the chamber, the nozzles having slit-shaped orifices and being mounted in pairs of spaced single nozzles, the nozzles of each pair being inclined toward each other and having a barrier comprising at least one rigid wall extending between the orifices thereof and being of the same height, and exhaust channels in the chamber in proximity to the pairs of nozzles.

## The Rejections

The references relied on are:

| | | |
|---|---|---|
| Dungler | 2,590,849 | Apr. 1, 1952 |
| Vits | 3,181,250 | May 4, 1965 (Filed Sept. 21, 1961) |
| German Patent | 1,145,572 | Mar. 21, 1963 |

---

There are three rejections under 35 U.S. C. § 103: claims 9, 10, 12–15, 18–20, and 22 are rejected on Vits; claims 17 and 18 on Vits in view of the German patent; and claim 21 on Vits in view of Dungler.[2]

Vits, like appellants, discloses an apparatus for drying, surface refinement and similar treatment of an elongated web of flexible material by directing jets of a gas or vapor against the opposite

---

2. Claims 17, 18, and 21 read:

17. An apparatus according to claim 9 in which the exhaust channels are centrally divided by means of a baffle extending in a direction parallel to the longitudinal axis of the web.

18. An apparatus according to claim 9 in which the exhaust channels each comprises a trough having a parabolic cross-section and formed of sheet material, the troughs being spaced from each other and each pair of nozzles being defined by the exterior edges of adjacent troughs and by baffle means mounted between the edges.

21. An apparatus according to claim 9 including a plurality of separate nozzle chambers in each of which the distance between the nozzle assemblies and the web is independently variable.

faces of the web such that the web is maintained in a position between the nozzles without touching them. Figs. 1, 10, 11, and 16 have been emphasized by the parties:

<u>Vits' Drawings</u>

[A1649]

As shown in Figs. 10, 11, and 16, the nozzles may be formed with slit-shaped orifices 47, 48 mounted in pairs and inclined toward each other. Describing the operation of this apparatus, Vits states (our emphasis):

> [T]he material is exposed to the influence of blower jets arranged at least in rows transverse to the direction of feed and having edge flows directed towards each other, said edge flows confining spaces tapered in the direction towards the web, in which *a static excess pressure is generated and web-carrying air cushions are formed.*
>
> * * * the space confined by the blower jets in such a way as to form hollow jets is primarily filled with treating medium entirely at rest. It is thus capable of taking up the edge flow deflected at the web whereby a static excess pressure relative to the adjacent flows is formed. Media such as air being under static excess pressure within a confined space will cause the formation of some sort of cushion. By arranging several hollow jets in rows in a direction transverse to the direction of web feed, an equal number of air cushions is formed so that it merely requires a suitable distribution of the cushions relative to the length of the web to achieve an absolutely stable support of the web. * * * A surprisingly stable equilibrium is thus generated causing the web to be held in mid-air between the blowing

nozzles as if suspended by invisible hands. This state of equilibrium is bound to be brought about because the web enters a sphere of heavier edge flow when approaching the nozzles due to the fact that the distance between the web and the jet-producing devices is reduced, and the deflection of the more powerful edge flow at the web is all the stronger and the static excess pressure in the space confined by the marginal jets becomes all the higher. This excess pressure immediately results in a widening of the distance between the web and the nozzle so that the stable support of the web in a center position between the hollow jets is a necessary consequence of the measures described.

\* \* \* \* \* \*

\* \* \* it is necessary to provide for a progressive formation of cushions between the hollow jets and the web of material so that the approaching web is elastically pushed back into its center or nominal position. *The resilient buffer* must not only be a little progressive but must be extremely progressive, and it *is formed in build-up spaces confined by the web, by blowing jet screens, and by the base in which the jet orifices are located.* To enable the build-up pressure to form there, it is necessary that the *base surface* between the outlet rows have as little connection to escape channels as possible.

The German patent and Dungler also disclose apparatus for drying and treating webs of fabric or fiber. The former was relied on by the examiner in rejecting claims 17 and 18 (see note 2, supra) "to show that the pressure characteristics of the air adjacent a web may be varied by varying the cross-section of the air nozzles and exhaust channels" while the latter was relied on in rejecting claim 21 (see note 2, supra) "to illustrate the use of a plurality of nozzle chambers which are independently movable with respect to the web."

■ Referring to the German patent and Dungler, the board stated:

[W]e need not consider these subsidiary references since the features for which they have been cited are conceded as being made obvious by lack of argument to the contrary.

Here, appellants do not dispute the accuracy of this statement beyond stating that their brief before the board contained the general conclusion that the "combination of the subsidiary references with the Vits patent was improper." Since appellants have not seen fit to include in the record before this court any of the amendments or briefs filed below (so that we might judge for ourselves), we must assume that below appellants had tacitly conceded the relevancy of the secondary references. To permit appellants now to criticize these references, would only encourage less-than-full development of issues when an application is still at the examination stage. As was stated in *In re Soli,* 50 CCPA 1288, 317 F.2d 941 (1963), "issues should be crystalized *before* appeal to this court." Accordingly, we will not give separate consideration to the secondary references or the rejections of claims 17, 18, and 21.

Regarding the rejection of claim 9 over Vits alone, appellants point out that in their nozzle structure, the baffle 3 (Figs. 1 and 4) extends between and is of the same height as the orifices 5a, whereas in the Vits drawings, baffles 44 (Fig. 10 and 11) and 62 (Fig. 16) are shown as being recessed below the level of the orifices. This difference, appellants say, yields new and unobvious results not obtainable by the Vits structure and renders the claimed structure patentable. Appellants also argue, apparently for the first time, that Vits does not disclose the use of exhaust channels.

With respect to the alleged differences in results, appellants submitted evidence as to pressure gradient which occurs as a web of material is moved toward the orifices of one embodiment of appellants' nozzle structure. Appellants compare

this gradient with that reported in Vits. The former shows a very high increase in pressure when the nozzle-to-web distance is decreased in the range of 0 to 20 millimeters. There is a pressure minimum at a distance of 15 to 30 millimeters and as the distance is increased above 30 millimeters the pressure increases and then falls abruptly. Vits, on the other hand, reports a pressure gradient which steadily increases as the web approaches the nozzle.

The examiner observed that the confined spaces formed between the jets of air, the web, and the wall between the nozzles are very similar in appellants' and Vits' apparatus, the only apparent difference being that in the latter the space is somewhat larger. The examiner also noted that Vits discloses the formation of air cushions and in Fig. 1 illustrates eddy currents 16 and 17 formed within the space 15 between the web and the wall 13. The evidence submitted by appellant, the examiner said, "does not show any * * * results which are not present or obviously obtainable in the Vits system."

Agreeing with the examiner, the board said:

As appellants point out the form of Figures 10 and 11 is probably the best considered relative to the sole difference argued. These two figures show an embodiment in which the air jets extend across the lateral dimension of the web. The disclosure of this patent as is unchallenged is that many such devices are utilized in series for supporting the web, there being a series both above and below the web to float the web in between.

It will further be seen that the wall 44 is at a plane lower than the discharge plane of the discharge nozzles 47, 48. *This is the sole difference argued anywhere in* [*the*] *brief or reply brief.*

In connection with this difference appellants call attention to the exhibits * * * we find these exhibits to be unpersuasive that this sole difference

warrants the issue of a patent. The basis urged is that it yields unobvious results. However, the exhibits are not persuasive of this conclusion. To be persuasive it should be shown that *two forms of apparatus, otherwise identical, involving this single difference,* the one involving such difference yields advantageous utilities not yielded by the other. There is no such showing. [Emphasis ours.]

### Opinion

On the basis of the record before us, we must conclude that appellants' nozzle structure would have been obvious to one of ordinary skill in the art. We do not find convincing appellants' argument that Vits does not disclose exhaust channels. Admittedly, Vits does not use the expression "exhaust channels." However, Vits does refer to "escape channels," "flow-off between rows of nozzles extending in parallel," and of "a staggered or zigzag arrangement [of nozzles] whereby wedge-shaped intermediate spaces for flow-off are formed." Although none of the figures from Vits reproduced above does so, other figures therein show spaces between rows of nozzle heads clearly intended to serve in the same manner as appellants' exhaust channels.

The only arguable difference between the structure recited in appellants' claim 9 and that disclosed by Vits is the positioning of the baffle. In this regard we note that while Vits' Figs. 10, 11, and 16 illustrate nozzle structures in which the baffles are below the level of the nozzle orifices, there is nothing in the text of Vits' disclosure to indicate that this positioning is essential or even to be preferred. We also note that appellants do not contend that no eddies would be produced by the Vits structure; rather, they contend that the structure "does not create the dynamic supporting eddies and air cushions *to the desired degree*" (emphasis added). Appellants' exhibits do not persuade us that the positioning of the baffle level below the nozzle orifices produces unobvious results or even results different from those obtainable with

the Vits apparatus. It is apparent from appellants' exhibits that the *appearance* of a plot of pressure exerted on a web versus the web-to-nozzle distance will be greatly influenced by the maximum web-to-nozzle distance at which a measurement is taken and by the pressure at which the gas jets are maintained. Since the plots shown in Vits' drawings give no idea of the magnitude of these variables, they cannot be compared meaningfully with those in appellants' exhibits. We therefore agree with the board that appellants, if they hoped to sustain their position, should have compared two forms of apparatus differing only in the positioning of the baffle with respect to the nozzle orifices.

The decision of the board is *affirmed*.

Affirmed.